Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 415 | **DATE** | 5/13/2003 |
| **CASE TITLE** | Barbara Rakoncay vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [16-1] is granted, the Commissioner's motion for summary judgment [22-1] is denied, and the case is remanded to the Commissioner for a supplemental hearing consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 15 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 26 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FD-7 FILED FOR DOCKETING 03 MAY 14 PM 4: 31 | 5/13/2003 date mailed notice | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office U.S. DISTRICT COURT | DK mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BARBARA RACONKAY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART, ) <br> COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | Case No. 02 C 415 <br><br> Magistrate Judge Morton Denlow |

DOCKETED
MAY 1 5 2003

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Barbara Raconkay ("Claimant" or "Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§416 (i) and 423. Plaintiff claims the Commissioner's decision to deny her benefits should be reversed because the Administrative Law Judge: 1) did not find that she met a listing level impairment, 2) failed to call a medical expert to testify at the administrative hearing on whether her condition was the equivalent of a listing level impairment, and 3) rendered a decision unsupported by substantial evidence. This case comes to the Court on cross-motions for summary judgment. For the reasons stated herein, this Court grants Plaintiff's motion for summary judgment, denies the Commissioner's motion for summary judgment, and remands this case to the Commissioner for a supplemental hearing consistent with this opinion.

26

## II. BACKGROUND

### A. PROCEDURAL HISTORY

This case is Claimant's second application. Her first application was approved and she was found disabled and first placed on benefits on September 30, 1988. R. 37. Her impairment was borderline mental retardation. *Id.* Her benefits were terminated retrospectively as of 1991 by notices issued in 1996 and 1998. A hearing was held before ALJ Lovert Bassett. On January 25, 2000, ALJ Bassett determined that Plaintiff's period of disability ended effective January 1991, the first month of substantial gainful activity ("SGA") after completion of her trial work period. R. 30-38.

On February 1, 2000, Claimant filed for disability insurance benefits alleging a disability since May 1, 1994. R. 82. Plaintiff's application was denied initially and again on reconsideration. R. 43-46, 49-51. Claimant then filed a request for hearing. R. 55-56. A hearing was held before Administrative Law Judge ("ALJ") Robert T. Karmgard, and an adverse decision was issued dated February 23, 2001. R. 18-29, 174-228. On November 21, 2001, the Appeals Council denied Plaintiff's request for review, making the decision the final decision of the Commissioner. R. 4-5. The case is properly before this Court pursuant to 42 U.S.C. §415(g).

### B. HEARING TESTIMONY - DECEMBER 5, 2000

#### 1. Claimant's Hearing Testimony

Barbara Raconkay was 37 years old at the time of the hearing. R. 183. She has lived with her father her entire life. R. 184. She earned a General Equivalency Diploma ("GED") in 1983. *Id.* She can read and write and perform basic addition and subtraction, however, she cannot make change. R. 184-85. She no longer has a driver's license and has not worked since 1996. R. 185-87.

Plaintiff has problems walking and falling on stairs. R. 186. She cannot run, kneel, or bend, and she has trouble holding onto objects with her right hand. R. 197-99. She drops things once or twice a day and falls once a day. R. 199. Her daily activities include completing household chores, working on puzzles and reading the newspaper. R. 195. She shops with her father and reads romance novels and some parts of the newspaper. R. 196-97. She tires after performing household tasks such as sweeping. R. 200. She rests for an hour after doing her household activities. R. 202. She has a poor memory. R. 203. She can stand for ten to fifteen minutes at a time before needing to lie down, she can sit for twenty minutes at a time, walk a block and a half, and lift six pounds. R. 197.

Plaintiff's work experience includes cleaning for the Metropolitan Water Reclamation District of Greater Chicago in the summers between 1990 and 1994. R. 191. The Commissioner at the Metropolitan Water Reclamation District of Greater Chicago wrote that Plaintiff worked as a summer worker "under strict supervision and was constantly monitored because of her inability to function as a normal worker." R. 117. Plaintiff also held a job in food service at Norwegian Lutheran Bethesda Home Association during 1990-1992. R. 193. In 1995 and 1996, Plaintiff worked as a "tagger" for Marshall Fields department store five hours per day, five days a week. R. 187-88. Plaintiff also worked as a dishwasher at East Ann Arbor Inn five days a week, six or seven hours per day, sometime in 1995 for several months. R. 190-91.

**2. Paul Raconkay's Testimony**

Plaintiff's father, Paul Raconkay, testified that he arranged her jobs at the Water Reclamation District, Park District, and Bethesda Home through his contacts. R. 213. Plaintiff's tendency to fall while walking or when descending stairs as well as her tendency to drop things had worsened in the last two or three years. R. 213.

### 3. Vocational Expert James Radke

James Radke ("Radke"), a vocational expert, also testified at Plaintiff's hearing. R. 215-27. Radke classified Plaintiff's previous work activity as light in exertion. R. 218. The ALJ asked Mr. Radke about job possibilities in the regional economy for a hypothetical individual with Plaintiff's vocational profile who can lift and carry a maximum of ten pounds occasionally and lighter items frequently. R. 219. In addition, the individual could stand and/or walk for up to two hours in an eight-hour workday, but no longer than fifteen or twenty minutes continuously. *Id.* The person could sit with normal breaks for up to six hours in an eight-hour workday, but could not climb ladders, ropes, or scaffolds. R. 220. The individual could perform postural activities on an occasional basis and had some decrease in fine dexterity. *Id.* However, the individual could use her hands to pick up and manipulate objects such as silverware and coins. The person could also button and zip her clothing. *Id.* However, she needed to avoid exposure to hazards such as unprotected heights or excavations and could not be exposed to unprotected moving parts or dangerous machinery. In addition, the person could not recall or carry out complex or detailed instructions or perform complex or detailed tasks. *Id.* The individual could, however, understand, recall, and carry out simple instructions and perform simple, repetitive tasks on a sustained basis. R. 220-21. Radke testified that such an individual could not perform any of Plaintiff's previous work, but that she could peform 2,000 administrative support jobs at the sedentary, unskilled level; 1,000 mail clerk jobs (private mail service); 1,100 production inspection jobs; and 1,500 general laborer jobs. R. 221-22.

If the person's corrected visual acuity was 20/50 bilaterally, he would reduce the number of mail clerk positions to 500, reduce the number of administrative support positions to 1,500, and reduce the number of production inspector jobs to 250 to 400 jobs. R. 222-23.

4

If the person could only read at the fourth grade level, he would reduce the number of administrative support jobs to 750, but that it would not affect any of the other jobs. T. 223-24. If the person had a mild to moderate decrease in both gross and fine dexterity, Radke testified that the production inspector and mail clerk jobs would be eliminated, the general laborer jobs would be reduced to 200, and the administrative support jobs would be reduced to 300. R. 225. Finally, if the person could not perform frequent changes of position, the general laborer jobs would be eliminated and the administrative support jobs would be reduced to 100. R. 226-27.

## C. MEDICAL EVIDENCE

The medical evidence consists of records from Plaintiff's treating physician, Dr. Robert Sufit; the report from an evaluation by Dr. Claude Hamilton, a state appointed physician; the reports from two reviewing physicians, Dr. Robert England and Dr. Henry Bernet; and the report from a psychiatric exam conducted by Dr. Phillip Mankoff.

### 1. Dr. Robert Sufit

Dr. Robert Sufit diagnosed Plaintiff with myotonic dystrophy in 1998 and is her treating neurologist. R. 143. Myotonic dystrophy is a rare, slowly progressive hereditary disease, which is a form of muscular dystrophy. R. 14. On January 21, 1998, Dr. Sufit conducted a neurological examination on Plaintiff and found her to have bilateral ptosis (drooping of the upper eyelid), some muscle weakness, and little cataracts. R. 146. Dr. Sufit ordered an edectrocardiogram and told Claimant to return in six months. *Id.*

During the July 8, 1998 evaluation, Plaintiff denied having any vision problems, despite the ptosis and facial atrophy noted by Dr. Sufit. R. 145. Plaintiff's next evaluation by Dr. Sufit was on July 28, 1999. R. 144. Plaintiff denied having any problems with her myotonia and informed Dr. Sufit that she exercised well on a stepping machine. *Id.* Dr. Sufit

diagnosed stable myotonic dystrophy. R. 144.

In August 1999, results from an EKG ordered by Dr. Sufit showed Plaintiff to be within normal limits. R. 147. On August 13, 1999, Dr. Sufit wrote a letter "To Whom it May Concern," reporting his role as treating physician for Plaintiff since 1998. R. 143. This letter explained that myotonic dystrophy is a permanent condition characterized by stiffness, pain, and weakness in the arms and legs. He reported that the condition causes patients to have difficulty walking more than short distances or standing for prolonged periods of time. Patients cannot always move quickly due to the stiffness and weakness and can have difficulty climbing stairs. He observed that her condition and the disability it creates are "permanent." *Id.*

### 2. Dr. Claude Hamilton

Dr. Claude Hamilton conducted a neurological exam on March 17, 2000, at the request of the state disability examiners. R. 148. The physical examination revealed that hand grasp was mildly weak and dexterity was mildly decreased. R. 150. Plaintiff was able to pick up a coin, touch each finger to the thumb, and get dressed and undressed slowly and without too much difficulty. *Id.* She also had no difficulty getting on and off the examination table. *Id.*

The neurological exam revealed Plaintiff's motor strength was strong everywhere except for the mild weakness of her hands. R. 151. Plaintiff had difficulty opening her hands after a forceful contraction and exhibited some weakness of plantar flexion, which appeared to be 4/5. *Id.* She was able to walk 50 feet without the use of a cane. *Id.* Plaintiff could squat, although she did exhibit difficulty getting on her toes and could not tandem walk. *Id.* After repetitive muscle stimulation, Plaintiff showed signs of some mild fatiguing at the gastrocnemii (knee joint). R. 152. Dr. Hamilton noted that Plaintiff's learning

disability was most likely related to her myotonic dystrophy. *Id.* Furthermore, Dr. Hamilton observed that Plaintiff was apparently capable of responsibly managing her own funds. *Id.* Dr. Hamilton concluded that Plaintiff's main problem was related to moderate myotonia of the hands and gait difficulties (i.e. tripping and falling). *Id.* His final conclusion was that her prognosis is guarded, her condition appeared to be mild to moderate and stable with no signs of progressive deterioration in her neurological status. *Id.*

### 3. Dr. Robert England

In March 2000, Dr. Robert England, a state agency physician, reviewed certain of Plaintiff's medical records and assessed Plaintiff's residual functional capacity ("RFC"). R. 165-172. Based on the available medical evidence, Dr. England concluded that Plaintiff could perform a restricted range of sedentary work. *Id.*

### 4. Dr. Henry Bernet

On May 1, 2000, after reviewing Dr. England's RFC assessment, Dr. Henry Bernet, a state agency physician, affirmed Dr. England's opinion. R. 165.

### 5. Dr. Phillip Mankoff

Dr. Phillip Mankoff performed psychological tests on Plaintiff at the request of the state disability examiners in November 1995. R. 135-39. Plaintiff's scores on the Weschler Adult Intelligence Scale-Revised ("WAIS-R") were a verbal IQ of 78, a performance IQ of 75, and a full scale IQ of 75. *Id.* On the Wide Range Achievement Test-Revised ("WRAT-R"), Plaintiff tested below a fourth grade level in reading (word recognition), at a third grade level in spelling, at a fifth grade level in arithmetic, and at a seventh grade level in oral reading comprehension (ability to recall what was read). *Id.*

During the behavorial observation, Dr. Mankoff noted that Plaintiff was extremely immature and her testing exhibited judgment similar to that of a fifteen or sixteen year old

immature adolescent. R. 136. Dr. Mankoff reported that her associations were coherent and her thought processes were logical, although he had some question as to her insight and judgment. *Id.* Despite her overall motor slowness, Dr. Mankoff observed no impediment with regard to effective communication or her ability to get along with others. *Id.*

Plaintiff did not appear to have any serious emotional difficulties or problems. R. 138. Dr. Mankoff concluded that Plaintiff has the potential for functioning within the mid-borderline range of intelligence with the presence of a learning disability. *Id.* He observed that Plaintiff appeared motivated with regard to full-time employment. R. 139. He reported that her abilities did not preclude work as a stock clerk or in some area of light office work such as filing and clerical areas. *Id.* He noted that plaintiff was capable of following directions and performing repetitive tasks and, as a result, the prognosis for successful training and employment was fairly good. *Id.*

### D. ALJ DECISION

Plaintiff was denied benefits by the ALJ in a decision dated February 21, 2001. R. 18-29. The ALJ made a determination based on the five step sequential analysis. The ALJ first found that Plaintiff had not performed SGA since 1996. R. 22. An evaluation of the second and third steps led to the finding that although Plaintiff's condition qualified as "severe," it failed to meet the required level of severity set forth for any impairment in Appendix 1 to Subpart P, Regulations No. 4. R. 23. In addition, Plaintiff's condition did not meet or equal the severity of symptoms required to meet a §12.05C listing for mental retardation nor the §§11.13, 11.17, 11.04B, 11.15 listings for sustained disturbance of gross and dexterous movements, or gait and station. *Id.*

Before proceeding to the fourth and fifth steps of the analysis, the Claimant's residual functional capacity ("RFC") was established. R. 23. The ALJ considered the full record

including the Claimant's testimony. R. 27. After taking into consideration all of the medical evidence, the ALJ found that she could lift and carry up to 10 pounds occasionally and lift or carry items such as small hand tools or individual case files frequently. R. 23. She could stand or walk for no more than a combined total of 2 hours in an 8 hour work day, or for not more than 15 to 20 minutes continuously; and she could not sit for more than 6 hours in an 8 hour work day. *Id.* She could not climb ladders, ropes or scaffolds; she could only occasionally climb ramps or stairs; and she could only occasionally balance, stoop, kneel, crouch or crawl. *Id.* She has decreased fine manual dexterity, but retains the capacity to pick up and manipulate objects such as coins, silverware, or perform tasks such as buttoning and zipping of clothes. *Id.* She has a visual defect with a best correct visual acuity of 20/50 bilaterally, but retains the capacity to focus upon and clearly discern objects/symbols/letters. *Id.* She cannot remember and carry out complex or detailed work instructions or tasks, but retains the capacity to understand, remember and carry out simple instructions and to perform simple repetitive tasks on a sustained basis. *Id.* The ALJ determined that there was insufficient medical evidence to support the Claimant's allegations of disabling symptoms and limitations. *Id.* Therefore, based on these findings, the ALJ found that Claimant did possess RFC for a limited range of sedentary work. R. 28.

The fourth step is whether the Claimant's RFC allows her to perform any past relevant work. R. 26. The VE testified that Claimant's past relevant work as a janitor, tagger and food service worker, was light and unskilled and would be too demanding to perform considering her RFC. *Id.*

The ALJ concluded in the fifth step that the Commissioner successfully showed, based on the testimony of the vocational expert, that there are jobs existing in significant numbers in the economy which the Claimant can perform consistent with her age, education, work experience, and residual functional capacity, notwithstanding her impairments. R. 28. The ALJ found Claimant not disabled and denied her claim for disability insurance benefits. R. 29.

### III. LEGAL STANDARDS

#### A. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g), which provides that the findings of the ALJ are conclusive if supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if the "reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

A reviewing court may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence to support the findings. *Id.*; *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The reviewing court has the power to enter a judgment "affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. 405(g).

## B. DISABILITY STANDARD

A disabled individual is eligible for SSI benefits "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . ." 42 U.S.C. § 1382c (a)(3)(A). The substantive requirements for SSI benefits are substantially the same as those for Social Security disability benefits under Title II of the Social Security Act ("SSA"). *Donahue v. Barnhart*, 279 F.3d 441, 443 (7th Cir. 2002).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if the ALJ, at any step of the process, finds that the claimant is not disabled. *Id.* The ALJ must inquire: (1) whether the claimant is working and the work is substantial gainful activity, (2) whether the claimant's impairment is severe, (3) whether the impairments meet or equal a listed impairment in 20 C.F.R., pt. 404, subpt. P, Appendix 1, (4) whether the claimant is able to perform his past relevant work, and (5) whether the claimant's age, education, and past relevant work experience in reference to his residual functional capacity, enables him to do other work. 20 C.F.R. § 404.1520 (b)-(f). In order to determine whether the claimant can perform any past relevant work (step 4), the ALJ assesses the claimant's residual functional capacity ("RFC"). 20 CFR § 404.1520(e). The RFC is defined as the most that an individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities. 20 CFR § 404.1545. The burden of proof is on the claimant through step four; the burden shifts to the Commissioner only at step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

11

## IV. ANALYSIS

The issues presented are: (1) whether the ALJ erred in failing to find that Claimant met one of several impairment listings; (2) whether the ALJ erred in failing to call a medical expert before finding that Claimant's condition was not equivalent to a listing impairment; and (3) whether the ALJ's decision is supported by substantial evidence.

### A. THE ALJ DID NOT MAKE AN ERROR OF LAW BY FINDING THAT PLAINTIFF DID NOT MEET THE LISTING UNDER §§11.17, 11.13, or 12.05C.

#### 1. §11.13 and §11.17

Plaintiff first contends that the ALJ did not properly consider the listing level impairment at step three under §11.13 for muscular dystrophy and §11.17 for degenerative disease not otherwise listed. Claimant bears the burden of showing that she meets all the requirements of a listed impairment. *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999). To meet these listings medical evidence must show significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. 20 C.F.R. pt. 404, subpt. P, App. 1, §§11.04B, 11.15B. The two physicians who personally examined Plaintiff concluded that her condition was mild to moderate at the time. Dr. Sufit reported that Plaintiff had some muscle weakness, but she said that she exercised well on a stepping machine. R. 144, 146. Dr. Hamilton noted that Claimant had a mild decrease in manual dexterity related to her myotonia of the hands, which was found to be moderate at the time. R. 152. One of her main problems was difficulty with gait, however Dr. Hamilton noted that she showed no signs of progressive deterioration in her neurological status. R. 152. Furthermore, the two state agency physicians who reviewed Plaintiff's medical records concluded that her condition, while limiting, did not prevent her from performing sedentary work. R. 165-172. Plaintiff

failed to show that her condition was significant enough to meet listing §11.13 or §11.17. Therefore, the ALJ's decision is supported by substantial evidence.

### 2. §12.05C

Plaintiff also contends that the ALJ erred by failing to find that she met the listing under §12.05C for mental retardation. A claimant is considered disabled due to mental retardation under §12.05C when she has:

> "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.

Section 12.00(B)(4) provides that where more than one IQ is customarily derived from the test administered, i.e. where Verbal, Performance, and Full Scale IQ's are provided as on the WAIS, the lowest of these is to be used in conjunction with §12.05. 20 C.F.R. pt. 404, subpt.P, App.1, §12.00(B)(4). Plaintiff's 1995 WAIS-R scores do not meet the listing threshold, with the lowest score being 75 in both the full scale and verbal sections of the test.[1] Furthermore, although myotonic dystrophy commonly causes mental retardation, Plaintiff's physicians only diagnosed her as having a learning disability with functioning within mid-borderline range of intelligence. Consequently, the ALJ's finding that Plaintiff did not meet the listing for mental retardation under §12.05C is supported by substantial evidence.

### B. THE ALJ IMPROPERLY FAILED TO CALL A MEDICAL EXPERT.

Claimant's second argument is that the ALJ should have obtained the services of a medical expert to give an opinion as to whether Plaintiff's condition was equivalent to a listed impairment. The Court agrees for the following reasons. First, Plaintiff was

---

[1] Although earlier IQ testing in 1981 showed a verbal IQ of 70, there is no question of validity concerning the more recent 1995 testing and the examining psychologist reported that the 1995 scores were an appropriate measure of current cognitive function.

previously found to have been disabled by the Commissioner commencing September 30, 1998. Despite no evidence of any substantial improvement in her condition, she is now found not to be disabled. This raises substantial concerns. Second, it appears that no doctor reviewed the entire medical record. The doctors who reviewed the case at the state agency level did not review or consider Dr. Mankoff's psychological evaluation. R. 43, 49, 135, 165-73. The Seventh Circuit has made it clear that the ALJ and the medical experts must consider the combined effect of Claimant's impairments. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003); *Fox v. Heckler*, 776 F.2d 738, 740-42 (7th Cir. 1985); 24 C.F.R. § 926a(a). Third, in the absence of a medical expert or any other medical review of the comprehensive medical record, the ALJ was left to make the important medical judgment of whether Claimant's condition was equivalent to a listed impairment. The Seventh Circuit has cautioned judges not to succumb to the temptation to play doctor. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Finally, the record does not indicate that the ALJ properly considered the aggregate effect of all of Claimant's ailments. If the ALJ lacks sufficient evidence to make a decision, he must adequately develop the record and obtain expert opinions. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

## C. THE ALJ'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

The Commissioner argues that the ALJ's decision was supported by substantial evidence and that the hypothetical posed to the VE was an accurate description of Plaintiff's RFC. In making a decision, the ALJ need not address every piece of evidence or testimony, but he must sufficiently articulate his reasoning leading to his decision. The ALJ must build an accurate and logical bridge from the evidence to his conclusion. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

The Plaintiff argues that the ALJ failed to build an accurate and logical bridge nor did he consider all of the relevant evidence presented in the medical reports and the testimony from the Plaintiff, her father and the VE. The ALJ must present a proper hypothetical question that is supported by the medical evidence in the record. *Ehrhart v. Secretary of Health and Human Services,* 969 F.2d 534, 540 (7th Cir. 1992). In the present case, the ALJ made assumptions where the medical record was unclear concerning her ability to read at the fourth grade level and failed to account for additional physical and mental limitations supported by the medical record, such as her limitations in gross manual dexterity, and her inability to frequently change position.

The Commissioner argues that the ALJ did not have to consider Plaintiff's ability to read at a fourth grade level in his hypothetical because her oral reading comprehension was at the seventh grade level. However, there is confusion over the interpretation of Dr. Mankoff's medical evaluation. Dr. Mankoff reported at one point that Plaintiff reads at a fourth grade level, however in his summary and recommendations, he notes that her ability to read was at the seventh grade level. R. 135, 138. Her ability to read impacts her ability to work. Therefore, the ALJ should clear up this confusion in order to determine the appropriate reading level to include in the hypothetical.

Second, the ALJ failed to consider the fact that Plaintiff could not frequently change position. Dr. Hamilton reported that Plaintiff had mild fatiguing with repetitive muscle stimulation and one of her main problems was difficulty with her gait, such as tripping and falling. R. 151. Furthermore, Dr. Sufit reported that patients with myotonia cannot always move quickly due to the stiffness and weakness. R. 143. Therefore, the medical record supports a finding that Plaintiff was limited in her ability to change position frequently and this limitation should have been included in the hypothetical.

## VI. CONCLUSION

Plaintiff suffers from myotonic dystrophy, a rare slowly progressive form of muscular dystrophy. She was found disabled in 1988. Her condition has not improved. She was found not disabled in 2001. Social Security proceedings are not adversarial. The goal is to determine whether Plaintiff is disabled in light of all of her mental and physical impairments. A medical review of Plaintiff's entire medical history is required. Therefore, **the Plaintiff's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and the case is remanded to the Commissioner for a supplemental hearing consistent with this opinion.**

**SO ORDERED THIS 13th DAY OF MAY, 2003.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**


**Copies mailed to:**

| | |
|---|---|
| Beth A. Alpert | Kathryn A. Beverly |
| Beth A. Alpert & Assoc. | Office of General Counsel |
| 53 W. Jackson Blvd. | 200 W. Adams St. |
| Suite 515 | 30th Floor |
| Chicago, IL 60604 | Chicago, IL 60606 |
| | |
| Attorney for Plaintiff | Attorney for Defendant |